Next. Case call for oral argument is in great Paternity of A.B. Case call for oral argument is in great Paternity of A.B. Counsel. Good morning. Police, the court. Counsel, I'm attorney John Sanders of law firm of Sanders and Sanders. I represent the appellant and the original petitioner, Tim Matthews, in this case. The issues, there really are two issues today that we bring forward. The first issue deals with a procedural matter is whether the circuit court erred in granting the mother's motion to dismiss without an evidentiary hearing on the issue of standing. And then the second issue is whether our Illinois courts, and this court in particular, will continue to recognize that the Illinois Parentage Act does not mark Commonwealth theories of misrepresentation and fraud actions. As I was driving up here, I was kind of debating between the two introductions I did today. My first one was kind of a funny thing happened on the way to the appellate court. The Supreme Court entered a decision in Scarlet Z just three weeks ago that we'll talk about. But more seriously and appropriate, we come here today, Mr. Matthews and I, on taking a long shot. A long shot that we believe and certainly Mr. Matthews believes is so important. A long shot for Mr. Matthews to continue to have a relationship with the child that he had had for nine years. A long shot for his child, Abby, to continue to have a relationship with her only father that she had known for nine years. The facts and the record on this appeal is very brief. We got stopped before we ever really got started. There's no transcript. There's no testimony. All that is the record is the sworn petition filed by Mr. Matthews and then the mother, Amy's, sworn affidavit. That's all the record is. The facts are pretty brief. Ms. Clark and Mr. Matthews had a romantic relationship. A child was born. The parties lived together prior to the child was born. The baby is born. They live together for about 18 months after the baby is born. And then for some reason they are separated. But during this time period, Mr. Matthews, they continue to co-parent the child together. Mr. Matthews provides support. This is in his petition. He has a regular visitation with the child. And then when the child is nine years old, the mother drops a bombshell on the child and says, oh, I'm the one alone. Your father is really not your father. The man that she had called daddy, that Ms. Clark had called dad, his parents were called grandfather and grandmother, oh, he's not your father. And drops that bombshell on Mr. Matthews also. Well, we bring a petition to establish paternity, parentage, and fortunately the blood test, we were forced to take a blood test. The blood test shows that the person that she knew as her father, Abby knew as her father for nine years, was not her father. So when we bring this to the court, the only hearing we had was on the motion to dismiss that was filed by the mother. The motion to dismiss was couched in the 2615 motion. That's what it says in her motion. And that's what we prepared a memorandum of law in response saying, yes, we have planned a cause of action. And we set forth. We brought the action. We reported to the court what the blood test has shown and that he was not, Mr. Matthews was not the biological father of the child. But we had in our memorandum, in our response, that we had pledged a sufficient case under the common law theory of equitable estoppel, promissory estoppel, as well as fraud. At least that's what we go to the hearing for. And the court then and counsel says, well, it's really an issue of standing is why we're bringing the affirmative, which is under 2619. Even though that's not what the motion to dismiss said. She does mention 2619 at one time, but throughout, she refers it to as a 2615. And Judge Lewis says, well, counsel, you're not surprised that it's a standing issue. And I said, no, I'm not surprised, but that's not what I prepared for. You know, we hadn't submitted any affidavits because we were coming on failure to state a cause of action is what the motion to dismiss was. I left that hearing believing we would have an opportunity to either submit affidavits or have an evidentiary hearing. That's what I requested was we should have an evidentiary hearing before the court. There are some cases. It's funny. I don't know why this gets kind of mixed up. But I think even in some of the cases that we've cited in our brief, that seems to be a common problem is it's brought as a 2615, but it slips into as a 2619. But in all those cases in which the court says, well, we're not going to say that it was a 2619, afforded the petitioner the opportunity to present evidence, whether it be affidavits or testimony. We were not afforded that opportunity. Judge Lewis then shortly thereafter rendered his decision, sent the decision, and said that this was not an artificial insemination case, that he saw this, that I was not surprised, that it was an issue of standing, and that, therefore, we could not bring this action, did not have standing to bring an action. We believe the judge did not follow the law. That was at that time. And then we certainly were asking that we should have an evidentiary hearing on standing. Give Mr. Matthews the opportunity to show that we did satisfy, had sufficient facts, evidence regarding a common law theory of equitable estoppel and misrepresentation and fraud. Okay, that's the first issue. Then comes the second. Sir, question. If you would have been allowed to present evidence, would that have gone beyond what was in your pleading? Yes, we would have been able to certainly encounter what she had put in her affidavit. We did not put any counter evidence as to her allegations in her affidavit. We were not able. We did not have stipulation as to facts. We had not sent counter affidavit because, once again, we were looking at it as a failure to state a cause of action. And we would have certainly been able to present a better picture of what we had. But, all granted, he sets forth what his facts were. I believe looking at what Judge Lewis did was he looked at no matter what the facts are, no matter what the facts are, he interpreted the law that you can have an action, that the Parentage Act barred any type except for artificial insemination cases. And I think that's what he is saying. The case that we rely on, rely on today, is the Coley decision by the, I believe it was the 2nd District in 1999. That case in which, very similar to ours, factual situation, very similar to ours, where for eight years the father was led to believe that he was the father, act as the father, pay child support, have visitation, bonded with the child. And the Coley allowed standing to proceed and went to a best interest determination in Coley. Judge Lewis, with all due respect, discounted Coley. And I bring forth here today that this court has never overruled Coley. The Supreme Court has never overruled Coley, and it's still good law. Plus, if this court will recall, in 2012, a case that came from Judge Lewis for Williamson County, in fact, counsel behind you, argued that case that came before here in 2012 in the TPS case. That was an artificial insemination case that this court said, we do not believe the Parentage Act bars equitable relief, bars hollow law theories of equitable estoppel, promissory estoppel. And that's what we're relying on. And this court reversed that case, sent it back on contract determination and promissory estoppel. Judge Lewis certainly recognized that case, the TPS case, because it was his case originally that came up here and said it was a distinction because it was an artificial insemination case. Well, he is right and he is correct that this court limited its decision in the TPS to artificial insemination. But this court clearly said that we're not, we do not see that way it got to its decision, the way you received, got to your decision was if the legislature had intended in the Parentage Act to bar common law theories of equitable estoppel and promissory estoppel, it would have said so. And so it allowed that case, and in that case that's where a same-sex couple had agreed to artificial insemination and agreed to co-parent, and the non-birthing mother was very involved with the child's life and had created a bond and was there. The court said based on promissory estoppel that, this court said based on promissory estoppel to send it back to the court for a best interest hearing. So I believe that this court had left the determination of if there's sufficient facts for misrepresentation, for fraud, promissory estoppel, that we should be able to present that to the court, have a hearing on whether we have standing. And I certainly believe we have sufficient facts, otherwise I would not have represented the client and brought this forward and should have been afforded that opportunity. As this court has said and recognized and the Supreme Court has recognized, our courts have recognized often the public policy, it is the right of every child to have the physical, mental, emotional, and monetary support of his or her parents. And we know our courts have said in grade MJ, that's where the Supreme Court allowed a mother to bring a parent in action against a former lover who had agreed to help co-parent the child after artificial insemination. He, men may separate it, he says I don't have anything to do with this child and the Supreme Court says yes, on promissory estoppel, humble all fury, promissory estoppel, will allow the mother to proceed to collect child support. Here we have a gentleman who's willing to pay support, be the father of this child, has been the father of this child, no dispute, for nine years. Is there a biological father named? No, not in any of the pleadings. We don't know who the biological father, there has been no biological father alleged in the affidavit of Ms. Clark or any response. This is the only, this has been her father here. But he knew from birth that he was not on the birth certificate, correct? There was an argument about that. He wanted to be on the birth certificate and thought he should have been on the birth certificate. But he never pursued any type of legal action to establish visitation or any type of visitation? No, because he was proceeding from her. There was ruled by the petition, and it's not disputed in her affidavit, that he was seeing the child. In fact, on her page 89 of her brief, she states that it was in the best interest of the child for this continued relationship, that of this deceased. And she didn't use the word deceased, that's me using that, but continued relationship because it was in the child's best interest. She admits that in her brief there, and we certainly believe that it was in the child's best interest. And then when the child is nine years old, and she calls it a short time period, well it's nine years, that's not a short time period. And so then as soon as visitation, as soon as his contact was denied now, he hires us and we come forward and bring an action as soon as this is denied. And so this is very tough. As an officer of the court, I'm going to shift to the Supreme Court three weeks ago ruled on Scarlet Z. And it's not briefed by any of us because it's just a recent decision. I've given it to counsel this morning, made her aware of it, I was made aware of it also here recently. Scarlet Z is the case where it's an adoption case. I'm sorry, excuse me. But it is an important case, I wanted to make sure. We are aware of it. All right, thank you. Thank you, counsel. Counsel? Good morning. Hi, I'm Paula Newcomb. I'm the attorney for Amy Clark, who is the appellee in this case. The defendant responded at the trial court level. I'd like to first point out about the procedural issue. Judge Lewis did make a fairly summary determination that the case should be dismissed for lack of standing. And the counsel argues that he was not prepared to deal with the issue of standing on a 619 basis, that he thought he would be allowed to give more information on that issue. But in my argument, I've indicated that although the motion to dismiss was phrased as a 615, a paragraph, I believe it is 14 in that motion, I did allege that the defendant did not, or the plaintiff in the trial court didn't have any standing. Probably should have been broken into two motions rather than one. But this court, in the case of NRA TPS and KMS, has indicated that in evaluating the circuit court's dismissal, we look at the substance of the motion to dismiss, not its label, Winters v. Wingler, goes on to say, between those two people that was talked about in that contractual incident case, between two ladies that had children together, that, accordingly, Kathy was able to address the substance of the standing issue in response to these motions and was not prejudiced by these labeling of her motion. Well, since that case originated out of Winters and KMS, I certainly believe that Judge Lewis was aware of that issue and felt comfortable unruling on the standing issue from the outset. So he did base, we had a verified plea from the petitioner, we had the motion to dismiss and an affidavit filed by my client. My client has never filed an answer or a verified response yet because we haven't been required to. But, nevertheless, I think he's well within his purview of the discretion of the trial court to deal with the standing issue initially. Now, and so don't think there's any error there. But, secondly, there are no cases that support this cause of action in Illinois that are clearly on point with this case. The argument is made that Quayle, Holder Quayle, supports this case. And that case is different. The plaintiff sought intentional infliction of emotional distress and fraud. And in that case, the plaintiff was a stepson, a lady. The reading says it's very high profile, successful woman who had been his stepmother. She divorced her husband and then continued a relationship with her stepson, which became romantic. And then she had a child, and it wasn't his child, but she misled him for years. And he sought an action to declare, and his remedy, he asked, was that this child needs to be told the truth. But that he wanted to continue his relationship with the child, but he wanted the child to be told the truth. And the court granted his cause of action, but it's completely different theories. It's very different on the facts here. The Supreme Court in Scarlet, and I just briefly read that. Mr. Sabres did point it out to me this morning. I briefly read it on my phone on a download, and it is where the court has refused to adopt an equitable adoption theory. In that case, and I think that case is important for this case, because there's argument that he's paid support, he gave some money to this child for years, and that somehow should give him a cause of action. But in Scarlet, the parties agreed to adopt a Slovakian national child. The mother went and made the adoption. He couldn't do that because he was not a Slovakian national. And they lived together for a while. I guess raised this child, but they were not married, so he never adopted the child. When they split up, he sought an action to get access to the child. But the plaintiff, the father in that case, wanted to be an adoptive father, had established, according to that record, a $500,000 trust fund for that child. But nevertheless, the Supreme Court said, we're not recognizing the equitable adoption theory here. You don't get to go forward. So it's clear that money spent is immaterial to the analysis of whether you should recognize a cause of action here. The first time this came before the court, the attorney case, my client agreed to the paternity testing because she knew the outcome would be, there would be no paternity found. This was appeal brought before that ruling on count one had actually made it into the record. So this court dismissed the appeal first and went back to the trial court. Judge Lewis ruled that the paternity case, count one, that her paternity should also be dismissed. She's filed her brief. This fact pattern, all these cases that come before the court have peculiar fact patterns. They're not just a woman and a man that meet, date, have a child, don't marry, and go their separate ways, which is this case. And my client did allow him to continue to see the child because they had a bond. And there's frankly nothing wrong with that. But at some point there has to be, what is the point that it's compassionate for the child and for the father, this alleged father, the standing father, to know the truth and have this straightened out? At some point that has to happen. But all these cases, you have two ladies that have a couple and they're disputing a guardianship. That's one of the cases. The Quill case is this fellow with his stepmother having, he thought a child, but there wasn't a child. All these cases, they have the adoption case with a Slovakian adoption, and those parties were never married. So they're not similar on the facts of this case. And as I pointed out, we have, I encounter a lot of times where people put their name on birth certificates and they know better. They know those people are not really the birth parents, the birth father, and it happens more often than you would think. And according to the legislature has enacted those statutes now because, you know, public aid or medical cards are issued, child support is ordered, and those things take place. And then people say eight years, ten years later, oh, I'm not really the father. I don't think I'm the father. But so now if you are on the birth certificate, you have a short time if you're not to dispute that unless you have some serious indication of fraud to get around that bar. I don't think there are any facts alleged here in this petition. My client rebutted the facts with her affidavit. In the affidavit, there are three different people mentioned that were present when discussions about the paternity were held. I think that Judge Lewis was correct in his analysis that there are no set of facts here that can be proven to confer standing on this father for a cause of action. The remedy that they're seeking in the reply brief, this is the remedy sought. A best interest hearing regarding the visitation rights of the child. Well, it would be improper to remand for that because we're not even anywhere near close to that step yet in the procedure of the case. And then the second is remand to proceed to the trial court to have an evidentiary hearing on the issue of standing. So if you believe that the trial court correctly analyzed standing and that there is no set of facts which grant standing here under the current state of Illinois law, then there's no reason to remand. And that would be the relief that we request. Thank you. Thank you, Counsel. Counsel? Well, two points. First, I believe there is a case that's right on point. That's the Coley case that we cite throughout our brief. The case is right on point. And before my time runs out, I do want to address the recent Scarlett C case because I know it will be presented to you by your clerks and all. When you look at Scarlett C, and it is the equitable adoption, and the court does say in that case that we are not recognizing, Illinois is not recognizing de facto parenting or functional parenting. The counsel in that case wrote a brilliant brief and argument of other states have recognized where the legislature has not acted, has recognized de facto parenting. Our Supreme Court has said we empathize greatly with these situations, but we're not going to recognize de facto parenting. Ours is different. If you look at Scarlett Z, you'll see the court still, after a 19-day trial in that case, the Supreme Court looked at and analyzed the misrepresentation allegations that was there. The court had the opportunity, the Supreme Court could have said, we're going to have the Parentage Act bar common law theories of actions, and the Supreme Court did not. It just said we were not going to recognize de facto parenting. And in Scarlett Z, it said there was no misrepresentation, no fraud, because the father in that case knew all along he was not the biological father because it was an adoption. They were adopting, so he's known. So it said there was no equitable estoppel, but the court analyzed the facts as to that issue. And so therefore, even though the Supreme Court had said that we're throwing this to the legislature to try to fix this problem with modern times and how families are set up and how we're doing, it still did not deny when there's a misrepresentation, and she admits it here in her brief and all is we left it a secret for nine years because it was out of compassion and out of best interest of the child, but now it's denying it. And the only, in her affidavit, the only times that she said that she would have told Mr. Matthews, who's now a father, and who knows if she would have been telling him the truth or not at that time, was at the time prior to birth. Never for the next nine years, because she put in her affidavit that there was ever telling him. Instead, they lived together, led him to believe, had him pay child support, had him create this bond with this child, and it's just horrendous now that this bond has been severed based because he wasn't there, that he wasn't the one who gave sperm for this child. He wasn't the blood father, and that is just a travesty. I do not believe the Supreme Court has shut down this action. With all due respect, I think Judge Lewis was incorrect in not allowing us to move forward with that case, and we should have been given that opportunity. And we ask that this matter, either if we look at our case and say, yes, we have standing, move on to the best interest of the child, or if you believe that there has not been sufficient record built in that regard, remand it so we can create a record and create the evidence and show to the court that Mr. Matthews is the father of this child in every sense other than my own. Thank you very much for your time and your counsel. We appreciate the briefs and arguments of counsel. We'll take this under advisement. The court will be in a short recess, and then we'll resume oral arguments. All rise.